**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>BASIC FUN, INC., *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 24-11432 (CTG)<br><br>(Jointly Administered) |

**MOTION OF DEBTORS FOR ENTRY OF AN ORDER (A) AUTHORIZING THE
DEBTORS TO ENTER INTO, AND PERFORM UNDER, THE RESTRUCTURING
SUPPORT AGREEMENT AND (B) GRANTING RELATED RELIEF**

The above-captioned Debtors and Debtors-in-possession (the "**Debtors**") hereby move (the "**Motion**") for the entry of an order (the "**Proposed Order**"), (a) authorizing the Debtors to enter into, and perform under, the Restructuring Support Agreement (the "**Restructuring Support Agreement**" or "**RSA**"),[2] an copy of which is attached hereto as **Exhibit B**, by and among the Debtors, Jay Foreman ("**Foreman**"), John MacDonald ("**MacDonald**", together with Foreman, the "**Founders**"), Basic Fun, L.P. ("**Basic Fun TopCo**", together with the Debtors, the "**Company Parties**"), Royal Bank of Canada ("**RBC**"), Falcon Structured Equity Partners, LP ("**Falcon**", together with RBC, Falcon, the Founders, and Basic Fun TopCo, the "**Non-Debtor Parties**"), and (b) granting such other relief as is just and proper. In further support of the Motion, the Debtors, by and through their undersigned counsel, respectfully state as follows:

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number or United Kingdom registration number, as applicable, are: Basic Fun, Inc. (9742), Basic Fun Holdco, LLC (0066), TGS Acquisition, LLC (3011), TBDUM, LLC (9615), and K'NEX UK Limited (1398). The location of the Debtors' principal place of business and the Debtors' mailing address is 301 Yamato Road, Suite 4200, Boca Raton, Florida 33431.

[2] All otherwise undefined terms shall have the same meaning ascribed to them in the RSA.

**PRELIMINARY STATEMENT**

The RSA is the product of extensive, arms' length and good faith negotiations among the Debtors and Non-Debtor Parties. The agreements set forth in the RSA will permit the Debtors to continue operating with minimal disruption, all on a timeline designed to minimize financial strain on the Debtors' business. Moreover, the Plan contemplated by the RSA comprehensively resolves a variety of disputes that otherwise would have required expensive and protracted litigation that would have undoubtedly sidetracked the Debtors' reorganization efforts, extended the duration of the Debtors' bankruptcy cases, and imposed a level of uncertainty onto the Debtors' ability to emerge successfully.

The RSA provides the Debtors with an actionable, expeditious path to confirmation of a Plan and emergence from chapter 11. Crucially, the Debtors' entry into the RSA and the Court's approval thereof, resolves Falcon's objection to (and is a condition precedent to Falcon's consent to) the Debtors' incurrence of the DIP Facility on a final basis—paving the way for an infusion of much needed liquidity into the Debtors and their business.[3]

As set forth in the RSA, the Debtors' desire to implement a restructuring (the "**Restructuring**") of their capital structure on the terms and conditions set forth in the (i) Term Sheet for Restructuring Support Agreement (the "**Falcon and Founders Term Sheet**") attached to the RSA as Exhibit 1, (ii) $50 Million First Priority Senior Secured DIP-to-Exit Revolving Credit Facility Term Sheet (the "**Great Rock Term Sheet**") attached to the RSA as Exhibit 2, and (iii) Term Sheet for Amended and Extended Subordinate Credit Agreement (the "**RBC Term Sheet**", together with the Great Rock Term Sheet and the Falcon and Founders Term Sheet, the

---

[3] While the Debtors have reserved the right to argue that Falcon's consent is not necessary for incurrence of the DIP Facility on a final basis, garnering Falcon's affirmative consent obviates the need for costly and potentially protracted litigation during the outset of these Chapter 11 Cases.

"**Term Sheets**") attached to the RSA as Exhibit 3. The terms and conditions set forth in the Term Sheets are incorporated by reference in the Restructuring Support Agreement and are hereby made a part hereof to the same extent and with the same force as if fully set forth herein.

The Debtors, in consultation with the Non-Debtor Parties, have established a procedure to implement the Restructuring through (i) entry of the final order approving the DIP Financing Motion (the "**Final DIP Order**"), (ii) entry of an order approving this Motion, (iii) a plan of reorganization under Chapter 11 of the Bankruptcy Code (the "**Plan**"), which shall implement the terms set forth in the Term Sheets (iv) the execution of exit financing documents on terms substantially similar to those set forth in the Great Rock Term Sheet and RBC Term Sheet (the "**Exit Financing Documents**"), and (v) the execution of an amended and restated Limited Partnership Agreement of Basic Fun TopCo (the "**Amended and Restated Limited Partnership Agreement**") attached to the RSA as Exhibit 4. The Restructuring as contemplated in the RSA will significantly strengthen the Debtors' financial position and better position the Debtors for long-term operational growth for the benefit of all stakeholders. Accordingly, the Debtors submit that entry into the RSA is in the best interest of the Debtors and the Debtors' estates and should be approved.

## JURISDICTION, VENUE, AND STATUTORY BASES FOR RELIEF

1. This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012. This is a core proceeding within the meaning of 28 U.S.C. § 157(b). The Debtors confirm their consent, pursuant to Local Rule 9013-1(f), to the entry of a final order to the extent it is later determined that the Court, absent the consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

2. Venue of this case and this Motion in this district is proper under 28 U.S.C. §§ 1408 and 1409.

3. The statutory and legal predicates for the relief set forth herein are sections 105(a) and 365 of chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**").

## FACTUAL BACKGROUND

**A.     General Background**

4. On June 28, 2024 (the "**Petition Date**"), each of the Debtors filed a voluntary petition in the Bankruptcy Court of the District of Delaware (the "**Bankruptcy Court**") commencing a case for relief under chapter 11 of the Bankruptcy Code (the "**Chapter 11 Cases**").

5. The Debtors continue to manage and operate their businesses as a debtors-in-possession pursuant to Bankruptcy Code sections 1107 and 1108.

6. No trustee, examiner, or committee has been appointed in the Chapter 11 Cases.

7. The factual background regarding the Debtors, including their current and historical business operations, and the events precipitating their chapter 11 filings, is set forth in detail in the *Declaration of Frank McMahon, Chief Financial Officer of Debtors, in Support of Chapter 11 Petitions and First Day Pleadings* [Docket No. 15] (the "**First Day Declaration**") and fully incorporated herein by reference.

**B.     The Restructuring Support Agreement[4]**

8. Through this Motion, the Debtors seek authorization from the Court to enter into the RSA with the Non-Debtor Parties. The RSA provides a framework for the Non-Debtor Parties to support the Debtors in their restructuring through the Chapter 11 Cases. The RSA represents a significant achievement for the Debtors because, among other things, it provides the basis for a

---

[4] To the extent of any inconsistency between the RSA and this Motion, the terms of the RSA shall govern.

fully consensual, comprehensive restructuring of the Debtors, including a significant deleveraging of the Debtors' balance sheet and permits the Debtors to maintain ongoing relationships with the Company's vendors and contract counterparties, and continue to grow and develop their valuable business on a go-forward basis.

9. The RSA contemplates an exit facility (the "**Exit Facility**") substantially on the terms and conditions set forth in the Great Rock Term Sheet that will support the Debtors' emergence from the Chapter 11 Cases.

10. The Falcon and Founders Term Sheet provides for, among other things: (i) a paydown of the Mezzanine Facility by the Founders and Falcon in the amount of $3,900,000 in exchange for an extension of the maturity date under the Mezzanine Facility to the date that is three (3) years plus 90 days after the Effective Date, (ii) the conversion of Last Out Loans and LP Notes to Founder Preferred Equity of Basic Fun TopCo, (iii) a restructuring of the Preferred Equity and Common Equity of Basic Fun TopCo, (iv) a refreshed management incentive plan, (v) a restructuring of the governance boards of the Debtors and Basic Fun TopCo, and (vi) an Acquisition Preferred Basket that will permit the issuance of preferred equity up to $10,000,000 for acquisition funding, subject to the terms of the RSA and Amended and Restated Limited Partnership Agreement.

11. Under the RBC Term Sheet, RBC and the Debtors have agreed to the material terms of an Amended and Extended Subordinate Credit Agreement for the Mezzanine Exit Facility. The Mezzanine Exit Facility will consist of First Out Term Loans in an aggregate principal amount equal to [$12,552,501.00] and Last Out Term Loans in an aggregate principal amount equal to $3,900,000.00, each with a maturity three (3) years and ninety (90) days after the Effective Date.

12. Overall, the transactions contemplated by the RSA will (a) ensure the Debtors' capital structure upon emergence is more aligned with their long-term growth strategy, (b) permit the influx of additional capital to facilitate the successful implementation of the Debtors' long-term growth strategy, and (c) provide the Debtors the most expeditious path to plan confirmation, allowing for minimal disruption to the Debtors' businesses during the Chapter 11 Cases.

13. Subject to the terms of the RSA and the Bankruptcy Court's approval of a Disclosure Statement, the RSA ensures the commitment of the Non-Debtor Parties to support the Plan. *See* RSA § 6.2.

14. Additionally, the RSA restricts the Non-Debtor Parties from transferring or assigning any right or interest relating to the Debtors, objecting to the Final DIP Order, supporting any other financial restructuring concerning the Debtors, taking any action materially inconsistent with the Term Sheets, voting against or otherwise objecting to the Plan, making an election under Section 1111(b), or taking any action materially inconsistent with the terms of the RSA. *See* RSA § 6.

15. In exchange, the Debtors agree to be bound by several obligations in connection with implementation of the restructuring transactions contemplated by the RSA. One of these obligations requires the Debtors to file a motion seeking authority to enter and perform under the RSA. *See* RSA § 3.1.

16. The RSA also contains certain milestones related to the Restructuring requiring the Debtors to obtain certain orders from the Bankruptcy Court, subject to the approval and availability of the Bankruptcy Court. *See* RSA § 4.1.

**RELIEF REQUESTED**

17. By this motion, the Debtors seek the entry of an order (a) authorizing the Debtors to enter into the RSA, and (b) granting such other relief as is just and proper.

**BASIS FOR RELIEF**

18. Section 363(b)(1) of the Bankruptcy Code provides that a debtor, "after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). In the Third Circuit, courts have authorized the use or sale of property of the estate outside the ordinary course of business when such use or sale is grounded upon a "sound business purpose" and is proposed in good faith. *See In re Del. & Hudson Ry. Co.*, 124 B.R. 169, 176 (D. Del. 1991); *Myers v. Martin (In re Martin)*, 91 F.3d 389, 395 (3d Cir. 1996); *Dai-Ichi Kango Bank, Ltd. v. Montgomery Ward Holding Corp. (In re Montgomery Ward Holding Corp.)*, 242 B.R. 147, 153 (D. Del. 1999); *In re Decora Indus., Inc.*, No. 00-4459, 2002 WL 32332749, at * 7 (D. Del. May 20, 2002); *In re Exaeris, Inc.*, 380 B.R. 741 (Bankr. D. Del. 2008).

19. Once a debtor articulates a valid business justification under Bankruptcy Code section 363, a presumption arises that the debtor's decision was made on an informed basis, in good faith, and in the honest belief the action was in the best interest of the company. *See Official Comm. of Subordinated Bondholders v. Integrated Res., Inc. (In re Integrated Res., Inc.)*, 147 B.R. 650, 656 (S.D.N.Y. 1992) (quoting *Smith v. Van Gorkom*, 488 A.2d 858, 872 (Del. 1985)); *see also Bridgeport Holdings, Inc. Liquidating Trust v. Boyer (In re Bridgeport Holdings, Inc.)*, 388 B.R. 548, 567 (Bankr. D. Del. 2008). Further, once "the debtor articulates a reasonable basis for its business decisions (as distinct from a decision made arbitrarily or capriciously), courts will generally not entertain objections to the debtor's conduct." *Comm. Of Asbestos-Related Litigants v. Johns-Manville Corp., (In re Johns-Manville Corp.)*, 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986).

The business judgment rule has vitality in chapter 11 cases and shields a debtor's management from judicial second-guessing. *See Integrated Res.*, 147 B.R. at 656; *Johns-Manville*, 60 B.R. at 615-16 ("[T]he Code favors the continued operation of a business by a debtor and a presumption of reasonableness attaches to a debtor's management decisions."). Thus, if a debtor's actions satisfy the business judgment rule, then the transaction in question should be approved under Bankruptcy Code section 363(b)(1).

20. In addition, the Debtors seek approval of the RSA pursuant to Bankruptcy Code section 105(a), which provides, in relevant part, that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." 11 U.S.C. § 105(a).

21. Here, approval of the RSA satisfies the business judgment test. The RSA is the result of extensive, arm's-length negotiations between the Debtors and the Non-Debtor Parties over several weeks, with all parties represented by sophisticated counsel. The terms of the RSA reflect significant concessions from all signatory parties. Importantly, the consensual restructuring facilitated by the RSA allows the Debtors to deleverage their balance sheet, maximize their enterprise value on a go-forward basis, and ensure the Debtors will be well-positioned for long-term growth and success.

22. Restructuring support agreements with terms similar to those included in the RSA are commonly approved in this jurisdiction and others. *See In re AeroCision Parent LLC*, No. 23-11032 (KBO) (Bankr. D. Del. July 31, 2023)*; In re Novation Companies, Inc.*, No. 23-11153 (JTD) (Bankr. D. Del. August 13, 2023); *In re Optio Rx, LLC*, No. 24-111188 (TMH) (Bankr. D. Del. June 6, 2024).

23. The Debtors believe that an expeditious emergence from the Chapter 11 Cases with the support of the Non-Debtor Parties under the RSA is essential to preserve the value of the estates and avoid unnecessary administrative expenses from a prolonged process. Given the significant benefits to be gleaned from a consensual transaction, the Debtors determined in the exercise of their reasonable business judgment that entry into the RSA is in the best interest of the Debtors' estates and should be approved.

## WAIVER OF ANY APPLICABLE STAY

24. The Debtors also request that the Court waive any applicable stay imposed by Bankruptcy Rules 4001(a)(3), 6004(h), 6006(d), 7062 or 9024, or any other Bankruptcy Rules or Federal Rules of Civil Procedure. As described above, the relief that the Debtors seek in this Motion is necessary to reach a resolution of this Chapter 11 Cases and preserve value for the Debtors' estates. Accordingly, the Debtors respectfully request that the Court waive any applicable stay of this Order.

## NOTICE

25. Concurrent with the filing of this Motion, the Debtors are providing notice of the Motion to: (a) the United States Trustee for the District of Delaware; (b) the holders of the thirty (30) largest unsecured claims on a consolidated basis against the Debtors; (c) counsel to the Prepetition Agents; (d) counsel to the DIP Lenders; (e) counsel to the DIP Agent; (f) the Internal Revenue Service; (h) the state attorneys general for all states in which the Debtors conduct business; (i) any banking or financial institutions which hold the Debtors' accounts; and (j) all parties entitled to notice pursuant to Bankruptcy Rule 2002. In light of the nature of the relief requested, the Debtors respectfully submits that no further notice is necessary.

## NO PRIOR REQUEST

26.     No prior motion for the relief requested herein has been made to this or any other court.

WHEREFORE, the Debtors respectfully request that the Court: (i) enter an Order in substantially the form attached hereto as **Exhibit A**, granting the relief requested herein; and (ii) provide such other relief as the Court deems appropriate and just.

| | |
|---|---|
| Dated:  August 7, 2024<br>Wilmington, Delaware | Respectfully submitted,<br><br>**POLSINELLI PC**<br><br>*/s/ Shanti M. Katona*<br>Shanti M. Katona (Del. Bar No. 5352)<br>222 Delaware Avenue, Suite 1101<br>Wilmington, Delaware 19801<br>Telephone: (302) 252-0920<br>Facsimile: (302) 252-0921<br>skatona@polsinelli.com<br><br>-and-<br><br>Mark B. Joachim (Admitted *Pro Hac Vice*)<br>1401 Eye Street, N.W., Suite 800<br>Washington, D.C. 20005<br>Telephone: (202) 783-3300<br>Facsimile: (202) 783-3535<br>mjoachim@polsinelli.com<br><br>*Counsel to the Debtors and*<br>*Debtors in Possession* |